UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RAYFORD,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 13-cv-05839-JCS<br><br>**ORDER GRATNTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 19 |

## I.   INTRODUCTION

Plaintiff James Rayford challenges the decision of Defendant Carolyn Colvin, Acting Commissioner of Social Security (the "Commissioner"), finding Rayford not disabled and therefore not eligible for disability benefits. Rayford argues that the administrative law judge ("ALJ") who denied his application for benefits erred in failing discuss reports of two psychiatrists who concluded that Rayford had more significant mental impairments than the ALJ ultimately found. The parties have filed cross motions for summary judgment pursuant to Civil Local Rule 16-5. For the reasons stated below, Plaintiff's motion is GRANTED, Defendant's motion is DENIED, and the case is REMANDED for further administrative proceedings to determine the significance of the psychiatrists' reports.[1]

## II.   BACKGROUND

The parties' arguments in this case address the narrow question of whether the ALJ erred in failing to discuss reports in the record from Dr. Jasdeep Aulakh, a psychiatrist who evaluated Rayford in 2009, and Dr. K. J. Loomis, a consulting psychiatrist who prepared a report later that year based in part on Dr. Aulakh's evaluation. This Order therefore focuses on the facts relevant

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

to that issue and does not attempt to recount Rayford's full medical history or the complete procedural background of his disability claims.

Rayford suffers from severe impairments due to degenerative disc disease of the lumbar spine and hypertension. Administrative Record ("AR," dkt. 15) at 70. He has also been diagnosed by multiple doctors with psychological impairments related to depression. *See id.* at, e.g., 320, 472.

### A.     First Application

Rayford's first application for disability benefits was denied by an ALJ on February 23, 2009. *Id.* at 52−59. The ALJ in that proceeding identified Rayford's "low back pain, depression, and obesity [as] severe impairments." *Id.* at 54. The ALJ found, however, that those impairments did not meet or equal any impairment listed in the Social Security regulations, and that Rayford remained capable of work in positions that existed in significant numbers in the national economy, including as a cashier or security guard. *Id.* at 54−58. The ALJ therefore determined that Rayford was not disabled. *Id.* at 58−59. Rayford does not challenge that decision.

### B.     Second Application

Rayford submitted a new application on March 24, 2009, alleging disability beginning on February 24, 2009—the day after his first denial. *See id.* at 67. Rayford recognized that under the Ninth Circuit's decision in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1985), his earlier denial created a presumption of non-disability, which required him to show changed circumstances. *See* AR at 24, 36, 67. He did not argue any change in his physical impairments, but rather "focus[ed] solely on [his] mental health . . . as a changed circumstance." *Id.* at 24 (statement of Rayford's attorney at an administrative hearing).

On June 17, 2009, Dr. Aulakh examined Rayford and prepared a report indicating that he had difficulty with certain tests of memory, calculation, and concentration. *Id.* at 319. Dr. Aulakh reported a "Global Assessment of Functioning Score" of 55, and stated that Rayford "may need support or coaching due to his depressed mood which renders his [sic] depressed and fearful thus affecting his persistence and reliability" and "may not be able to endure schedules or work in a full time position." *Id.* at 320. On July 23, 2009, Dr. Loomis prepared a report, which consists

primarily of checkbox responses, indicating that Rayford had "moderate" limitations in several categories. *Id.* at 321−34.

Dr. Lisa Kalich, a psychologist, examined Rayford in June of 2011, and determined that he had more severe psychological impairments than Dr. Aulakh had found. *See id.* at 466−73. Rayford's primary care physician, Dr. Steven Sackrin, wrote a letter in May of 2012 endors[ing] Dr. Kalich's assessment and stating that "[t]here is clearly no way [Rayford] can work at this time." *Id.* at 517−18. However, Dr. Ute Kollath, another psychologist, examined Rayford in August of 2011, and determined that he had only mild limitations. *Id.* at 474−81. Dr. Kollath concluded that certain test results were "congruent with what is seen as a malingering profile," and that Rayford's statements and cognitive test results were therefore "unreliable." *Id.* at 476.

The ALJ in this proceeding determined that Rayford "failed to prove that his depression is a severe impairment that has continued or can be expected to continue for a period of twelve months or more . . . [b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation of any of the first three functional areas and 'no' [extended] episodes of decompensation." *Id.* at 70 (citing 20 C.F.R. § 404.1520a(d)(1), 416.909, 416.920a(d)(1)). The ALJ determined that Rayford's psychiatric treatment and compliance with his medication were not consistent, and that his symptoms improved when he took his medication. *Id.* at 72.

The ALJ gave "very little weight" to the opinion of Dr. Kalich, noting factors including "evidence of medication noncompliance, treatment gaps, and malingering in testing," and that Dr. Kalich had not administered a test to detect malingering. *Id.* at 72−73. The ALJ also gave "little weight to the mental assessment of the claimant's primary care physician, Dr. Sackrin," because "the claimant's treatment notes do not support the severity of limitations." *Id.* at 73. Instead, the ALJ gave "significant weight" to Dr. Kollath's conclusion that Rayford had only mild limitations. *Id.* The ALJ did not discuss the conclusions of Drs. Aulach and Loomis. *See id.*

Because a vocational expert testified that someone with Rayford's physical impairments and the sort of mild cognitive impairments that Dr. Kollath reported could perform "several unskilled (SVP 2) positions available in significant numbers in the national [and regional] economy," the ALJ determined that Rayford was not disabled. *Id.* at 75. The Appeals Council

denied Rayford's request for review of the ALJ's decision. *Id.* at 1.

### C. The Present Motions

Rayford's motion does not challenge the ALJ's conclusions regarding his physical impairments, or the ALJ's decision to afford little weight to the opinions of Drs. Kalich and Sackrin. *See* Pl.'s Mot. (dkt. 16) at 6−7. Instead, Rayford focuses on the ALJ's failure to address Drs. Aulakh and Loomis, arguing that the "ALJ's failure to address all contrary medical opinions was legal error and . . . supports an order reversing the Commissioner's decision." *Id.* at 7 (citing, e.g., *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012)). Rayford contends that "the proper remedy is a remand for additional proceedings so that the ALJ may properly assess the medical opinions ignored in her decision," and does not ask this Court to award benefits without further proceedings. *See id.*

The Commissioner argues that an ALJ "need not discuss all evidence presented to her," that the relevant portions of Dr. Aulakh's report are merely equivocal, and that the record contains sufficient evidence to discount Dr. Aulakh's conclusions. *See* Comm'r's Mot. at 2−4 (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394−95 (9th Cir. 1984)). The Commissioner therefore asks the Court to uphold the ALJ's decision. *Id.* at 5.

## III. ANALYSIS

### A. Legal Standard

Disability insurance benefits are available under the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1). A claimant is only found disabled if his physical or mental impairments are of such severity that he is not only unable to do his previous work but also "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proof in establishing a disability. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). Where, as here, the claimant has previously been denied benefits, he must "overcome the presumption of continuing

nondisability [by] prov[ing] 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693.

The Commissioner has established a sequential five-part evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). At Step One, the Commissioner considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If she is, the Commissioner finds that the claimant is not disabled, and the evaluation stops.

If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and considers whether the claimant has "a severe medically determinable physical or mental impairment," or combination of such impairments, which meets the duration requirement in 20 C.F.R. § 404.1509. An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, disability benefits are denied at this step.

If it is determined that one or more impairments are severe, the Commissioner will next perform Step Three of the analysis, comparing the medical severity of the claimant's impairments to a compiled listing of impairments that the Commissioner has found to be disabling. 20 C.F.R. § 404.1520(a)(4)(iii). If one or a combination of the claimant's impairments meet or equal a listed impairment, the claimant is found to be disabled. Otherwise, the Commissioner proceeds to Step Four and considers the claimant's residual functional capacity ("RFC") in light of her impairments and whether she can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1560(b). If the claimant can still perform past relevant work, she is found not to be disabled.

If the claimant cannot perform past relevant work, the Commissioner proceeds to the fifth and final step of the analysis. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to show that the claimant, in light of her impairments, age, education, and work experience, can perform other jobs in the national economy. *Johnson v. Chater*, 108 F.3d 178, 180 (9th Cir. 1997). A claimant who is able to perform other jobs that are available in significant numbers in the national economy is not considered disabled, and will not receive disability

benefits. 20 C.F.R. § 404.1520(f). Conversely, where there are no jobs available in significant numbers in the national economy that the claimant can perform, the claimant is found to be disabled. *Id*.

    **B.**    **The ALJ Cannot Reject Conclusions of an Examining Physician Without Explanation**

The ALJ erred by failing to address Drs. Aulakh's and Loomis's reports. The Ninth Circuit's analysis in *Hill v. Astrue*, 698 F.3d 1153 (9th Cir. 2012), is directly on point in this case. The relevant portion of that opinion is as follows:

> Hill argues that the ALJ's residual functional capacity determination failed to take into account an evaluation by Dr. Lynn Johnson, a psychologist who examined Hill on May 25, 2007. In her evaluation, Dr. Johnson found that Hill's "combination of mental and medical problems makes *the likelihood of sustained full time competitive employment unlikely*." (emphasis added [in *Hill*]). Hill correctly notes that the ALJ's decision does not address this finding by Dr. Johnson.
>
> In order to reject an examining physician's opinion, "the ALJ has to give clear and convincing reasons . . . . Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r. of Soc. Sec. Admin.*, 166 F.3d 1294, 1298–99 (9th Cir. 1999).
>
> Here, the ALJ failed to provide Dr. Johnson's statement *any* degree of review at all, and gave no reasons for doing so, let alone any clear and convincing reasons. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (Although the ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, . . . he cannot reject them without presenting clear and convincing reasons for doing so." (internal quotation marks omitted)).
>
> The Commissioner concedes that the ALJ's decision does not address Dr. Johnson's opinion that Hill's "combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely." Nevertheless, the Commissioner argues that the ALJ's failure to consider Dr. Johnson's opinion was harmless because an opinion that an individual cannot work is an opinion on an issue reserved to the Commissioner and, therefore, it is not binding. See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). We disagree.
>
> Dr. Johnson's statement that Hill would be "unlikely" to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's *likelihood* of being able to

> sustain full time employment given the many medical and mental impairments Hill faces and her inability to afford treatment for those conditions. Thus, the ALJ's disregard for Dr. Johnson's medical opinion was not harmless error and Dr. Johnson's opinion should have been considered. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

*Hill*, 698 F.3d at 1159−60 (ellipses in original). Based on the ALJ's failure to consider Dr. Johnson's statement, among other errors, the Ninth Circuit remanded the case for further proceedings. *Id.* at 1163.

Just like in *Hill*, the ALJ here failed to acknowledge the report of an examining physician, Dr. Aulakh. *See* AR at 72−73 (discussing other medical evidence). Also like in *Hill*, Dr. Aulakh's report goes to the "likelihood of being able to sustain full time employment": Dr. Aulakh reported that Rayford "may need support or coaching due to his depressed mood which renders his [sic] depressed and fearful thus affecting his persistence and reliability," and "may not be able to endure schedules or work in a full time position." *Id.* at 320. The vocational expert testified that either of these limitations—a need for coaching or an inability to meet schedules—would preclude employment. *Id.* at 45−46.[2] Dr. Aulakh also reported a "Global Assessment of Functioning" score of 55, *id.* at 320, indicating "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text revision 2005).[3] Dr. Loomis's report, apparently based on Dr. Aulakh's examination, also indicates moderate impairment in several categories. AR at 329, 332−33. Those conclusions are inconsistent with the ALJ's findings and her interrogatory to the vocational expert, both of which characterized Rayford's non-physical impairments as only mild. *See* AR at 71, 260.

The Commissioner does not claim in this case that Dr. Aulakh's report may be disregarded as addressing an "issue reserved to the Commissioner." *Cf. Hill*, 698 F.3d at 1160. Instead, the Commissioner argues that: (1) an ALJ "need not discuss all evidence presented to her"; (2) Dr.

---

[2] The Court notes that Rayford's attorney specifically referenced Dr. Aulakh's report during his questioning of the vocational expert. *See* AR at 45 ("The third hypothetical, and I'm basing this, Your Honor, on Dr. Olak's [sic] CE performed a few years ago now.").

[3] This edition of the *Diagnostic and Statistical Manual*, commonly known as the DSM-IV-TR, was the standard psychiatric reference book at the time of Dr. Aulakh's report.

Aulakh's statements are merely equivocal; and (3) the record contains contrary evidence sufficient to discount Dr. Aulakh's conclusions. *See* Comm'r's Mot. at 2−4 (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394−95 (9th Cir. 1984)).

The Ninth Circuit's holding in *Vincent* is not applicable. In that case, an ALJ failed to address certain lay testimony and a letter from the claimant's former treating psychiatrist. *Vincent*, 739 F.2d at 1394−95. The psychiatrist had only treated the claimant before the alleged onset of disability; after the alleged onset, the psychiatrist had merely reviewed reports by subsequent treating physicians. *Id.* at 1395. The Ninth Circuit held that his letter, as well as lay testimony from the claimant's father and one of his employees, were not the sort of "significant probative evidence" that would require an explanation to reject. *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). The more recent decision in *Hill*, however, makes clear that the report of an examining physician is precisely the sort of probative evidence that cannot be rejected without explanation. *See Hill*, 698 F.3d at 1159−60; *see also* 20 C.F.R. § 404.1527(c).

The Court is also not persuaded that Dr. Aulakh's report can be wholly disregarded because it is "equivocal." *See* Comm'r's Mot. at 2. Even if that were true as to Dr. Aulakh's conclusions that Rayford "may" need coaching and have difficulty with schedules, there is nothing equivocal about Rayford's Global Assessment of Functioning score, which indicated "moderate" symptoms or difficulty. *See* AR at 320. Dr. Aulakh also reported that Rayford had difficulty with tests of memory, calculation, and concentration, *id.* at 319 and Dr. Loomis characterized those results as indicating moderate impairment, *id.* at 329, 332−33. While it is for the ALJ to determine the weight and credit that these reports merit, they cannot be dismissed as merely equivocal.

Finally, although the Commissioner has identified a number of reasons why the ALJ *might* discredit or give little weight to Drs. Aulakh's and Loomis's conclusions, generally echoing the ALJ's reasons for granting little weight to Drs. Kalich and Sackrin, the Commissioner is undoubtedly well aware that the Court is "constrained to review the reasons the ALJ asserts" for denying benefits. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Commissioner has cited no authority that

would permit the Court to repurpose the ALJ's reasons for rejecting some evidence—here, the conclusions of Drs. Kalich and Sackrin—to discredit additional evidence that the ALJ failed to address in any way—i.e., the reports of Drs. Aulakh and Loomis.

The ALJ may well find these reports unpersuasive, but it is also possible that they will tip the balance in the ALJ's analysis. Because it is not clear whether the ALJ considered these reports at all, the Court cannot determine how they might affect the ALJ's conclusion, and expresses no view on the subject. So long as the ALJ "specifically identif[ies] what testimony is credible and what testimony undermines the claimant's complaints . . . questions of credibility and resolutions of conflicts in the testimony are functions solely of the [ALJ]." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted); *see also* Comm'r's Mot. at 3 (quoting *Greger*). Further, even if the ALJ continues to credit Dr. Kollath's report indicating that Rayford was only mildly impaired in 2011, that does not foreclose the possibility that he was disabled in 2009. The matter is therefore remanded for further proceedings so that the ALJ may properly consider the evidence, resolve any conflicts, and, if necessary, supplement the record, to determine whether Rayford has shown materially changed circumstances as to his mental impairments since his first application was denied.

## IV.  CONCLUSION

For the reasons stated above, the Court GRANTS Rayford's Motion, DENIES the Commissioner's Motion, and REMANDS this case for further administrative proceedings consistent with this Order. The clerk is instructed to enter judgment in favor of Plaintiff James Rayford.

**IT IS SO ORDERED.**

Dated: April 1, 2015

JOSEPH C. SPERO
Chief Magistrate Judge